Ms. Carroll, when you're ready, when you're ready. Good morning, and may it please the Court, I'm Catherine Carroll on behalf of Appellant Northrop Grumman. I believe I've reserved five minutes for rebuttal? Yes. Your Honors, in light of concerns raised by multiple Federal investigations, Northrop Grumman has sought to confirm that its subcontractor, DynCorp, that their labor charges were valid. And it sought to do so after finally getting the documents it needed from DynCorp by submitting a claim to the Army Contracting Officer requesting a binding interpretation of the Federal labor category descriptions and a binding decision on the propriety of DynCorp's labor mapping. That CDA claim will resolve, in a binding manner, factual and legal issues that are at the heart of DynCorp's counterclaim in this case. And once the Army accepted that claim, the counterclaim became unfit for judicial resolution. Rather, as a matter of Federal law and policy, judicial consideration of DynCorp's counterclaim should not proceed in any court pending the Army's binding resolution of those legal and factual issues. That Federal defense rendered this case removable under Section 1442A1 because Northrop Grumman was acting under the Army contract at all times relevant to this litigation and because and then waited until April 2016 to file the CDA claim with the Army. So you knew what their claim was and then kind of sat around and waited. Actually, you didn't sit around. You filed a demur. You proceeded aggressively with the case and then decided 5 months after the counterclaim was filed on April 22 to finally file this CDA claim. And then you didn't ask for removal until May 12. So you knew for over 6 months, or not 6 months, I'm sorry. Yeah, you knew for 6 months that what the content of this counterclaim was and yet you pursued the state court remedy and decided to join in answering the counterclaim. You answered it in December of 2015. And again, it was 5 months later that you filed your notice of removal. How does that square? Sure. Let me take a shot at answering that. And I think to unpack it requires first understanding precisely what is the nature of the colorable federal defense that rendered this case removable. DynCorp's counterclaim, at the time that that counterclaim was filed, in our view the case was not then removable. Our federal defense is not an exhaustion defense. It's not our view that DynCorp's counterclaim had to have been presented in the first instance under the CDA procedures. Rather, the thing that made this case removable was the pendency of the CDA claim once the Army accepted it for resolution. That did not occur until, as Your Honor noted, the end of April. Shortly before you did, so the jury proceeded to have a jury impaneled and then remove the case then? Under your theory, what would have stopped you from filing the CDA claim on the eve of the jury trial, have the jury put in the box, and then you say notice of motion to remove. Right. Your theory of the case. To put some context around this to try to answer the question, I want to underscore that this was not a situation where Northrop Grumman could have just filed the CDA claim at any time. We had been requesting from DynCorp resumes, certifications, all of the qualification documentation that was needed to substantiate the labor charges since I believe as early as 2013. And despite the fact that their subcontracts required them to provide that substantiation upon request, they never did. But when you remove it, but when you remove a case, you don't have all the information you want to litigate in Federal court. But Your Honor, we could not, the case was not, the reason why this case is removable is because there is a pending Army proceeding. That pending Army proceeding did not begin until after the Army accepted our CDA claim, which in turn we could not have submitted any earlier than we did. DynCorp did not. What was the basis for your demur in the State court? So after the counterclaims were filed, there were demurs back and forth on both sides. I think with respect to the counterclaim, we pointed out the overlapping nature of some of the Quantum Merrowood and Undustin Richmond claims overlapping with their breach of contract claims and so on. But again, that's not relevant to the removability analysis because that occurred before the case became removable. Under this Court's decision in Grubb, for example, the standard for finding whether actions taken have essentially waived the right to remove holds that we have to look to actions taken after the case became clearly and unequivocally removable. That did not happen here. I don't think you answered my question, though. Could you have waited until the day of your jury trial to remove? I think we could have, we had to file the CDA claim with, in order to file the CDA claim, we needed the documentation to be able to say to the Army, you know, this is the situation and if you need the documentation, we can provide it to you. The thing that under 1446, I think Your Honor might be getting at the requirement of removing within a certain amount of time after receipt of another paper. If we had submitted our CDA claim and the Army had not given us any acknowledgment that it was, that it had received the claim or was going to proceed on the claim until the eve of trial, then I think in that case, there would, in fact, have been grounds to remove. That's not what happened here. But you can manipulate, so really what you're saying is the party can control the removal deadline by controlling the date it files its administrative claim. No, because to be clear, the thing that made the case removable was not just that we filed the claim, which was something that we could not have done at any earlier point than we did. We would very much have liked to have done that, to be, just to be very clear. As a practical matter, the whole point of this whole endeavor was we would have wanted to get that documentation much earlier, and if DynCorp had simply provided it, you know, we would have been able to proceed that way. But what, as far as the manipulation concern goes, the statute turns on the receipt by the removing party of the other paper, and in this case, we received acknowledgment from the Army that they were proceeding. Now, I think this goes in some respects as well to the question that the district court didn't address regarding the removability by the plaintiff, which I think maybe is relevant to your concerns. Well, I guess what I'm concerned about is that you're trying to use or that you are using ripeness as a defense here that must be litigated in the Federal forum, but in the same time, you're saying that it's something that renders it non-justiciable in the Federal forum. I mean, that would be the litigation strategy seems to me that you're trying to get it into the Federal forum to have it dismissed in the Federal forum. And by controlling the deadlines, it seems to me that it's going against the entire purpose of the removal doctrine. To the contrary, Your Honor. Our view is that this is a justiciability issue that renders the issues unfit for review in any court. The Federal interests here, given the fact that this is a claim that is now presently before the Army, we know now that the Army is actively looking, and we just received a letter from the Army last week actually that requested all of the invoices and substantiation. We know that they are now looking at it. From a practical perspective in our view, and from a justiciability perspective, given the fact that the issues here ultimately turn on the interpretation of Federal contract provisions that are flowed down to the subcontract, and given that this all turns not just on the abstract interpretation of those provisions, but on the Army's really discretionary determination whether at the end of the day was it receiving the kind of performance and service from contractor employees deployed to a war zone such that it might decide how strictly or how loosely to apply the labor category descriptions. Those are issues within the special competence of the Army. And you knew that, though. You knew that the Army, you could have filed the CD8 claim. We could not have filed the CD8. Why not? I don't understand that. Right. So we knew You knew there was a problem with the billing. You knew what you had told DynCorp to do. Everybody knew that there were square pegs and round holes, you know, in terms of what these people were doing and how they were billing. And so why couldn't you have filed the CD8 claim earlier? I don't think you've answered that adequately. I'm sorry for that. Let me give it another shot. We knew, based on the interactions that we'd been having with the contracting officer going back to mid-late 2013 or so, we knew that the Army was scrutinizing these issues very closely. We also knew that in the course of that scrutiny, they were asking for the kinds of documentation that would show whether or not the employees were properly mapped or not. So we anticipated that the Army was going to need that same kind of information. We also knew that as a matter of compliance with the Contract Disputes Act and simply, frankly, as a matter of behaving as a responsible federal contractor, that the best course and really the only acceptable course to Northrop Grumman was to say we're not, we can't submit this claim until we know what we're dealing with and until we have the documents that we know the Army is going to need and that they now have actually asked for. Because DynCorp refused, despite repeated requests forcing us to ultimately have to resort to litigation, because they refused to give us that documentation, we could not submit the CD8 claim until the point when we did. We got the last production of those documents, I believe it was mid to late March. We had our analysts take a look at them just to make sure we understood what did we have to sift out what was relevant and what wasn't and then to prepare and submit the claim. And we did that promptly as soon as we finally got those documents. As I said, we would have loved to have been able to accelerate that process, but unfortunately it wasn't within our control. I think that that point about the scrutiny that the Army contracting officer was taking for those years leading up to the CD8 claim also underscores why the district court was wrong to say that Northrop Grumman wasn't acting under the Army contract at the times relevant to this litigation. Over the course of at least the last few years, as the government was proceeding to investigate from multiple agencies, we had several interactions with the contracting officer that made clear that these labor mapping decisions were going to be subject to approvals, to waivers that had to be submitted to the contracting office. And DynCorp knew that. There were instances in late 2013 and again in 2014, that correspondence is noted in the briefing, where DynCorp was coming back to us to say, hey, we have these contracting officers to see if we can get approval to have those employees waived in the same way that they were waived in in the August 2013 proceeding. And then subsequently in the following year, the Army came back and said, we're not doing this, any sorts of waivers or approvals. From now on, you have to do all of this on a case-by-case basis to submit it to us. With that backdrop, it's, I think, unquestionable that the acts at issue in DynCorp's counterclaim go to the heart of Northrop Grumman's efforts to do its best to comply with the detailed, monitored regulation that the Army was giving us over how to deal with this labor mapping issue, that we were acting under the Army in doing so, and that once the Army said, okay, this claim is now before us and we are going to decide, it became at that point, and not any earlier, at that point, it became inappropriate for a court to attempt to resolve the same issues in a manner that, you know, could very easily have led to inconsistent judgments in a situation where under the subcontract, the parties have agreed to be bound by what the Army contracting officer says, you know, what happens in a determination. I think as a practical matter, from a disability perspective and given the Federal issues that will be resolved now by the Army, it became clear in, under the standards of the removal statute, that once the claim was before the Army, the Army should decide. I see 20 seconds left on my clock before my red light, so with that, perhaps I'll reserve the balance of my time unless the Court has further questions. Thank you, Ms. Carroll. Thank you. Mr. Barnes. Good morning. May it please the Court, Addison Barnes on behalf of Defendant Dyncourt. Despite telling the Court early in this case that this was simply a collections matter, my opponent has made it much more complicated by a removal, by arguing a CEA claim, and after setting sale in state court, litigating there aggressively for 14 months, 244 days after a counterclaim was filed, four months after filing an answer where it raised a rightness defense, they filed a notice of removal which was tardy and certainly they had waived it any right to do so. The District Court rejected the removal and we would ask the Court to affirm for at least four independent reasons. First, even if a plaintiff could remove, the removal was untimely. Second, even if a plaintiff could remove, Northrop Grumman waived any right to remove. Three, even if a plaintiff could remove, there's no federal office or jurisdiction under 1442 for a number of reasons, not the least of which they were not acting under for purposes of this action that was taken. There was no colorable federal defense. This rightness defense was raised as a state law defense, as the District Court recognized, and there's no causal nexus requirement. And finally, a plaintiff cannot remove. In 200 years of federal removal jurisprudence, Northrop Grumman has been unable to appoint to a single case where a plaintiff was able to remove, and that makes sense. The plaintiff chose the forum. If there had been a hostile state court, the whole purpose of the 1442 removal is to avoid a hostile state court for a federal officer or someone acting under a federal officer. Northrop Grumman filed a complaint in state court. They filed a complaint that included damages, and they raised some of these very concerns. If they had had a concern that there was a hostile federal court, they would not have chosen to file in a state court which was actually their state where there was a principal place of business for Northrop Grumman. Now, Mr. Barnes, in listening to Ms. Carroll's presentation, it seems to me the nucleus of her presentation is they couldn't have filed the CDA claim any earlier. So I think you need to address that head on. Absolutely, Your Honor. And I would say that Northrop Grumman's position has a faulty premise. Your Honor asked the appropriate question, could you have filed the CDA claim earlier. Our position is it could have and should have been filed in 2007. Northrop Grumman admits that there was an issue in 2007 when the contract was signed, and that's the prime contract between Northrop Grumman and the government. This is the dispute here, and the counterclaim is a contract dispute between two private contractors, actually two Virginia-based entities. That does not relate to the federal contract, the prime contract between Northrop Grumman and the government. But, Your Honor, the reason it should have been filed in 2007 is that Northrop Grumman recognized that there were mismatched labor categories. Instead of addressing that issue by a CDA claim or getting a contract amendment, Northrop Grumman told DynCorp, don't worry, we recognize they're mismatched, fit them some way somehow, make it fit. At that point, Northrop Grumman, as the prime contractor, was taking its own risk in going forward, having a subcontractor not, admittedly, not being able to put that square peg in a round hole, as Your Honor mentioned. Certainly, by the time that Northrop Grumman filed a complaint, or even at the time they were requesting substantiation from DynCorp, at that time, Northrop Grumman knew that it had a government that may be looking into whether or not those mismatched categories were going to have affected the billing in this situation, in this relationship. Over seven years, Northrop Grumman had been receiving, relying, approving, paying those invoices by DynCorp on those mismatched labor categories. So, by the time the complaint was filed, certainly Northrop Grumman knew about the mismatched labor categories and could have filed a CDA claim. Subsequently, when the counterclaim is filed, Northrop Grumman also knew that there was a claim being made for the $40 million that had been withheld by Northrop Grumman. Northrop Grumman cannot sit here, I don't think reasonably, and say that DynCorp was not going to file a counterclaim for $40 million that was withheld. This was under a private contract between Northrop Grumman and DynCorp. They understood, at the time they were requesting substantiation, that they were withholding that $40 million as hostage to try to get the substantiation. Unfortunately for Northrop Grumman, again, the CDA claim that they ultimately filed, 244 days after a counterclaim, on the eve of a State court trial, they understood that that claim was not what was in DynCorp's counterclaim. Two hundred and forty-four days after the counterclaim? Counterclaim was filed. That's when they removed? That's when they removed. And when was the trial scheduled? Trial was scheduled on July 25th in State court. It had previously been scheduled for April. Two months after removal? Yes. When they filed the notice of removal, what, the day before the sanctions hearing? Yes, they filed it the night before. We were in a deposition that afternoon. They continued the deposition, had filed the notice of removal, but did not inform us during the deposition that they had done so. But, Your Honor, the CDA claim itself, and I just want to be clear about this, the CDA claim itself has nothing to do with the counterclaim that was filed. DynCorp's counterclaim under a private contract, a subcontract just for the payment of money, the subcontract required payment to be in 33 days. It also had no pay when paid provision. So it was not, Northrop Grumman could not wait until it got its payment from the government before it had to pay DynCorp. Well, but why doesn't the CDA claim have something to do with it? I mean, I understand your point. I think you make a good point that it could have been filed earlier, the CDA claim. But why isn't it relevant to this litigation? Excellent question. The reason it's not is because in the CDA claim, Northrop Grumman is trying to get an interpretation that's consistent with the position that they took that was mismatched, that there were mismatched labor claims, labor categories. They had already, and they admit in the CDA claim, they had already told DynCorp, don't worry about the mismatch. So what Northrop Grumman is trying to do is they're trying to get cover for their own liability. They're trying to get validation of their litigation? That's correct. And that has nothing to do because it's already conceded that they told DynCorp to go ahead and do it this way because there were mismatched labor categories. So it has nothing to do with whether DynCorp gets paid. What's actually happening here is that Northrop Grumman is trying to shift the risk of loss as a prime contractor onto a subcontractor by withholding $40 million. It doesn't seem like that. It seems like that Northrop is saying that, as you said back in 2007, it seems like there's a mismatch. But we're going forward, I think both parties in good faith to try to work this out, knowing that it's not quite fitting. But ultimately, it's the government that really determines how these resumes and people and how much they're paid should be matched. And what they're saying is that now their position is the CDA claim is made and it's there and the arm is now taking it up. And that's the place to raise it. They can get relief that we now know that the arm's position is this and that would be relevant to the litigation. Isn't that what they're saying? Again, it's not relevant to the private contract between Northrop and DynCorp. What DynCorp is seeking, DynCorp's counterclaim doesn't say we're going to match these individual labor categories and that's why we need to get paid. Northrop Grumman admits that it already told DynCorp that those labor categories are mismatched. So if the army comes back one day and says to Northrop Grumman, well, we're going to change our mind. We're not going to do that. We're going to require you to conform with the mismatched labor categories. Northrop Grumman, as the prime, has already told its subcontractor, do it, make it fit. So there are, if you read the CDA... Well, that'll be your defense, of course, when they come back trying to use the army's resolution of it, that you waived it by going forward at your own peril going forward. But that doesn't mean that that's not an appropriate legal conclusion that they can at least use. Otherwise, if they don't wait for it or not in this forum, they never could use that defense, right? Well, Your Honor, I guess that gets into many questions. Again, whether it's a matter of whether the army may make a determination under the prime contract, does that affect... It's the rightness issue again. Does that affect whether or not DynCorp cannot go forward with its claim in state court? I would imagine there would be plenty of examples that this, where if you allowed a prime contractor in a dispute with a subcontractor to file a CDA claim on the last day of trial, before the jury goes out, that wouldn't be in the interest of judicial efficiency. So even if you get beyond that a plaintiff cannot remove, even if you get beyond that it was so untimely, even if you get beyond that they had litigated aggressively both on their affirmative claims and DynCorp's counterclaim for months, knowing that they had filed a rightness affirmative defense in December of 2015, they didn't remove until April of 2016. So even if you assumed that the DynCorp had an effect on the counterclaim, there are so many independent reasons, as the district court found, and Northrop has to win all of those. They have to show it's timely. They have to show they didn't waive. They have to show it's 1447. They have to show it's a colorable Federal defense. They have to show that it was at the direction of the Federal officer. They would have to show that there was a causal nexus between what the direction was by the Federal government and some effect on a private contract with a subcontractor, where there are many cases that say just because you are engaged in a subcontract relationship that may ultimately have something to do with the Federal government does not mean that it needs to be in Federal court. Northrop Grumman chose this forum. They chose a state court forum in their home state for state law claims and state law defenses to be determined. They had no choice, didn't they? There was no diversity. They did have a choice. If they filed their CDA claim, they could have said, well, the CDA, we could have had this issue at the outset of the case, not after litigating for 14 months and spending an incredible amount of money trying to litigate to a point where we were short of trial, only to have them at the end of that period of 14 months say, well, we're going to go to state court. Your Honor, I do also have to let the Court know because they've mentioned an army letter in the last week or two. It's not in the record, but that army letter basically suggests that their CDA claim is not what the Army is looking at. You've seen it? I have. They sent it to me, and that army letter suggests not that they're going to, it didn't mention the CDA claim, first of all, and it suggests not that they're going to adopt the interpretation that Northrop mentioned, but that they're going to go back to the mismatched labor cactus. That is far different than a CDA claim that they're trying to use to justify Federal jurisdiction. And again, it has no relation to the counterclaim that was filed for payment under a subcontract that would have required payment in 33 days and had no pay when paid provision. There was no right. Did Northrop Grumman ever indicate to you before the notice of removal that it might be removing? No. We were surprised. We got out of a deposition, and shocked is an understatement that Northrop Grumman would have done that when we had been in deposition. How did you find out? They sent me an e-mail that evening after it had been filed during the day when we were in deposition. I think your honors can probably imagine how shocked we were after 14 months of litigation in state court. Did they come to the hearing the next morning? We had a hearing the next morning, which was a discovery sanctions motion against Northrop Grumman. And they showed up and basically told the state judge that it could not be heard. We wanted to, of course, let the state judge know that we were on the docket. We had to show up because it was on the docket. We didn't just want to not appear. And Northrop's counsel said that this matter cannot go forward. We informed the state court judge that we thought the removal was improper. And within five days later, we filed a motion for remand and asked for as quick a hearing as possible. Northrop asked for more time. The judge made the remand decision, and we tried to go right back to state court because we were trying to protect our July 25th trial date. Well, did Northrop Grumman indicate to you that it was going to file a CDA claim eventually? Never. I mean, was this discussed at all during these 14 months? Never. So you're saying it came out of the blue? Out of the blue, Your Honor. So how long did Judge Kuceris take to rule? He ruled on the same day as the hearing. So Judge Kuceris heard arguments on the 2nd. I believe he issued an order that afternoon. 2nd of June. 2nd of June. And the removal was May 12th? The removal was May 12th. So you heard it three weeks? Well, Your Honor, we had asked for an expedited briefing schedule that Northrop wanted to push off, and we filed our notice of removal within five days, I believe. And his opinion was June the 6th? His opinion was June the 6th, I believe. Did he say he ruled from the bench three or four days later, or earlier? He did. So the remand hearing was on June 2nd, and that was the order was on June 2nd. His opinion was not until, I think, three or four days later. Maybe a few more days later. I will note that this... And then he asked for a stay, and he gave the stay. It did, under an automatic stay that we... So he resolved the whole thing in a month? He did, Your Honor, and we objected to the stay for obvious reasons. I understand that, but do I blame Judge Kuceris for... Absolutely not, Your Honor, and I think he wrote a well-reasoned opinion with multiple reasons why this removal was improper. After a year... Your Honor, they filed the CDA claim on June 22nd, which was about seven days after they lost the summary judgment motion on our counterclaim. And so they hustled to get some reason. They didn't want to go to trial. They didn't like the trial judge, I suppose, because at the same time they were asking for a stay and to dismiss after they lost the summary judgment motion. They wanted a jury trial after 14 months of litigating in state court, I guess, to get away from Judge Shannon. So Your Honor, I don't believe this removal should have been filed. I don't think the appeal should have been filed. I think there were many, many reasons why it was an improper removal. But even with the representations by Northrop's counsel that the Army would make a decision within 60 days after the CDA claim, we find out in a June 28th, 2016 letter that Northrop Grumman didn't even ask under the rule for a decision within 60 days. And it's now been a year and the Army hasn't acted on a CDA claim. So my client has been prejudiced for another year because this decision was almost a year ago. And it is trying to get paid under a counterclaim. And while $40 million might be a lot to Northrop Grumman, it might not be a lot to Northrop Grumman. And it is unfair on essentially a private contract between two parties that my client is having to put up with these types of actions which are merely delaying the claim that's been raised by my client. Your Honor, one point on the substantiation. Northrop has made an argument that there was a request for substantiation and DynCorp wouldn't provide it. Two important points there. The CDA claim does not attach anything that they got from us or they claim they asked for us in that discovery up through March of 2016. It doesn't attach one document that was produced by DynCorp. The reason is because their contract is with the government. Their prime contract is with the government. So the CDA claim relates to their relationship with the government. Their relationship with DynCorp is completely different. It's a subcontract which even has a different payment provision. Theirs is a cost reimbursement contract. Ours is a firm fixed price level of effort contract. There are different terms and conditions. So Your Honor, for them to come forward and say we were asking for all this substantiation and that's why we didn't file the CDA claim, that's not true. They didn't attach a single document. And Your Honor, they also don't tell you and it's in the record, but there was a letter that they sent to us in October of 2015 asking for the nearly a decade of substantiation, including license and certifications that Ms. Carroll mentioned. Within 24 hours of that letter to us in October of 2015, Northrop Grumman sent a letter to the government saying, wait, government, you can't ask us for all this substantiation. There needs to be a change order of the contract because we need to be paid for it. So what they were doing was asking DynCorp to provide the substantiation for free nearly a decade of material, but within 24 hours asking the government or telling the government that's not part of the contract. It's ex-contractual. We need to change order. We need to be paid for that. So what they were doing was trying to force DynCorp to do all this, which I believe my client properly said, we can't do all that without being paid for it. You're already not paying us $40 million. You're holding our money hostage. Okay, Mr. Barnes, let me ask you one question about the proceedings in the State Court. I think it was April 29th, Northrop Grumman filed a motion to dismiss based on its filing of the CDA claim. Did the State Court rule on that prior to the notice of removal on May 6th? Your Honor, the State Court did not rule on that, and I will say that's a very important point that they filed. I'm going to ask you, what, if any, significance do you place on the fact that they filed the notice of motion to remove in? It's an excellent question, and I would say if they thought that there was some Federal issue, some colorable Federal defense, they would not have been asking the State Court to take action. If you look at the motion to dismiss or to stay in State Court, it doesn't claim that there is a Federal defense anywhere. So if they had thought there was a colorable Federal defense based on a CDA claim in ripeness, they would not have argued to the State Court to get the relief that they then sought in Federal court. Similarly, if they had thought that this issue of labor categories was a Federal issue from the begin to begin with, they wouldn't have filed in State Court back in March of 2015 either. But, yes, the State Court did not get a chance to rule on that. It wasn't set for a jury. Right. So you're saying their State Court motion didn't discuss ripeness at all? Well, I'm not sure it discussed whether it discussed ripeness. What did it discuss? I don't believe it did discuss ripeness. I mean, I'll take a look, but yes. I have it, Your Honor. It discussed that we need to wait until after the CDA claim is decided. But, again, if that's the question that they thought was Federal, that justiciability issue, then that should have been presented to the Federal court or at least mentioned to the State court that there was something Federal about it. But, again, at that point, we are 14 months into a State court litigation. It's untimely and we haven't even gotten to the issue of whether or not a plaintiff can remove. So, Your Honor, I just, if I could make a couple additional points. One is that Northrop Grumman cites no case where a plaintiff is able to remove. Northrop Grumman cites no case where ripeness constitutes a colorable Federal defense. They cite no case where a removing party can create another paper. They cite no case where a removing party can determine its own removal timeline. They cite no case where a CDA claim deprives both a State and Federal court of jurisdiction. As a matter of fact, that would be inconsistent with 1442, which asks for the Federal court to make a decision. This is far different than a government contractor immunity defense, where there is actually something for the Federal court to decide. They're actually saying the court loses jurisdiction by virtue of the CDA claim. And, Your Honor, Northrop Grumman cites no case where a party was able to remove after litigating in a State court for 14 months, 244 days after a counterclaim, and four months after they filed a ripeness defense as an affirmative defense. And Northrop Grumman cites no case upholding removal where it tells a court it was acting under Federal direction, yet then files a CDA claim asking for direction. So the CDA claim is completely inconsistent with 1442, where they're claiming, we got some direction from the Federal government. Actually, their own CDA claim says, we need direction. We need direction from the Federal court. So this removal should never have been filed. The appeal should never have been filed. It's untimely. It was waived. 1442 was not satisfied. And on top of that, a plaintiff cannot remove. And therefore, the decision of Judge Katsharis, the well-reasoned decision of Judge Katsharis should be affirmed. Thank you, Mr. Bowen. Thank you. Ms. Carroll, you have time reserved. Ms. Carroll, I have a question for you out of the box. When you filed the CDA claim, did you attach any Dine Corps documents that you had obtained during the course of litigation? Right. So we submitted, and there's a public version of the CDA claim beginning at 334 of the Joint Appendix. We submitted with the claim a matrix listing all of the employees. We could not submit the documents themselves because they had been produced under protective order. So we said in the CDA claim, we now have these documents that we expect you'll need. And we are prepared to provide them to you upon request because that would have been Did you refer to the contents of them? I'm sorry? Did you refer to the contents of them in the CDA claim? We explained that we had the substantiation that would enable the Army to make the determination that we were asking it to make. Mr. Barnes has suggested that the CDA claim was submitted in an effort to get the Army to say one thing or another, and I think you'll find in the claim itself that that is not accurate, that the claim says essentially, here's our situation, here's what we're facing. We know that this has been the subject of intense Federal scrutiny and simply asking whether the Army intended, both how the Army interpreted the labor category descriptions and what the Army's assessment under those descriptions was of the particular employees at issue here. We said we would provide the documents upon request because of the protective order. Tell us, if you would, about this April 29th motion to dismiss in state court. You based it on the CDA claim, but you didn't wait for a ruling from the circuit court in Fairfax County. You did not wait. You said it had to be dismissed because of the CDA claim, but you didn't wait around. You changed your strategy and then decided to remove. What went on there? What was going on? So I'll try to lay it out. We submitted the CDA claim on April 22nd. We were, of course, aware under 1446 that a 30-day clock was going to start ticking at some point upon the receipt of the other paper from the Army back. By April 29th, at that point, we had not heard anything. So we filed the motion to dismiss without prejudice or in the alternative to stay. That was a motion that was, understandably, since we were filing it in state court, argued as a matter of state law that the issues were not fit for resolution in the event that the Army was going to decide it. That same day, we did then get a confirmation back from the Army. They said we've received the claim. They asked us to resubmit it to a different contracting officer, which we did on that same day. Subsequently, we are still trying to think about, okay, we got this acknowledgment today on April 29th from the Army. Is that going to start our 30-day clock? So at that point, it became, well, are we going to get a hearing date? The way that things transpired, it became clear that there was not going to be a hearing on our motion in state court within the period after we submitted and the Army accepted the CDA claim. So I'm finding the irony a little bit interesting here that in a case where we're being accused of a lot of delay, what was actually sort of explaining the answer to Your Honor's question was a concern to try to make sure that we were meeting the 30-day timeline. Has the Army looked at these Dine Corps documents or asked to look at them? That was the subject of the letter that we received on Wednesday of last week, and we'd be happy to submit a copy. Mr. Barnes noted that it's not in the record. We'd be happy to submit it if it would be of assistance to the court. What they asked us for was all of the outstanding invoices and all of the resumes, certifications, other qualifications information, so that they can go ahead and decide the issue. And by the way, the letter came from the same contracting office that is deciding the CDA claim. I want to go to this idea that, you know, my friend suggested that somehow this dispute between Northrop and Dine Corp is just a private, you know, just business between two contractors and nothing to do with the government and nothing to do with the CDA claim. As I think Judge Gregory, Chief Judge Gregory, you pointed out that the issues that are going to be decided in the CDA claim are precisely at the heart of Dine Corp's counterclaim. And the reason is though that in 2007, you knew this was a problem. We didn't have a dispute in 2007, Your Honor. I think it's quite clear, and I don't want to belabor the extent of DOJ, DOD red flags that were being raised in the 2013-2014 period, which prompted us to seek to resolve this between two contracting partners by asking for the documents. When that didn't work out, we were forced to take other measures. What the Army is going to decide are a couple of things that are going to be binding on the parties. Mr. Barnes suggested that's not the case. I can't quote out loud the provisions of the subcontract that we would rely on in response to that because they are under seal, but I would refer the Court to pages 951 and 954 of the sealed appendix, clauses 6 and 23B, which will explain why what the Army says in this proceeding about what the labor category descriptions mean and whether the mapping was valid in this case is going to be binding. Our view has been all along, if the Army looks at this and says, you know what, yes, there was a misalignment, but it fits, and given our objectives with the military program that we were carrying out here, we think it's appropriate to interpret these in a looser way that makes this mapping acceptable. If that's the Army's decision, then Northrop has always expressed its intent to abide by that and proceed. On the other hand, if the Army says, no, we have a problem here, and in fact there have been overpayments, and now Northrop, you owe us the government money because we paid you invoices that were based on improper labor charges, then it's entirely appropriate for Northrop to protect its rights by taking that position in litigation against DynCorp that if the claims are not valid, we don't have to pay, and that is also laid out in clause 34 of the subcontract also under SEAL. There was a lot of discussion during my friend's colloquy about litigation strategy and timing of different things, and I, you know, without kind of going tit for tat on every single thing, I guess I would make a couple of observations. One is that under 28 U.S.C. 1450, the orders and processes that were, that had already taken place in state court will carry over to the federal proceeding. So this notion that somehow removal was an escape from a ruling we didn't like on a demer or summary judgment motion is, I simply don't understand it because 1450 addresses that situation. And as for the other... Was the trial date intact? I'm pardon me? There was a trial date in state court. Would the trial date remain intact? I think the state court judge, I'm sorry, I believe that the federal court judge would of course have the latitude to assess under Judge Gutierrez's own schedule how that would work. I want to also clarify one thing about the trial that was scheduled in state court. The original trial date was set before DynCorp filed its counterclaims. After DynCorp filed its counterclaim, both parties agreed that the filing of those counterclaims dramatically changed the scope of the case. Both parties jointly requested that the trial be tripled in length from a three-day trial to a 12-day trial, I'm sorry, from a four-day trial to a 12-day trial. And when we suggested that a little bit more time would be appropriate, there wasn't really an objection. So again, there's a lot of characterizations about the litigation strategies and tactics here. This was no doubt a hard-fought case, but I think the best indication is that when Judge Gutierrez was asked to award costs, he did not. And so I think that tells us something about his view of the litigation here. If I may just say one last point on this concept that an original plaintiff can never remove and that doing so allows sort of the ginning up of one's own basis for removal. Section 1446E specifically contemplates removal by a counterclaim defendant, which I think more or less forecloses that argument. And it's very sensible when you think about it that a federal officer who initiates a state court action against a non-diverse defendant on issues that are purely state law in nature, which that was the nature of our original suit, isn't choosing a state forum.  If the other side then or some other third party interjects or introduces a basis to make the case removable, the idea that the purposes of the federal officer removal statute should be defeated by the fact that there had been an earlier proceeding would make no sense. Under DynCorp's reading, if the Attorney General of the United States filed a state law tort suit against a non-diverse defendant to deal with, say, a car accident, and that non-diverse defendant, taking advantage of Virginia's very permissive counterclaiming rules, files a counterclaim seeking to enjoin the Attorney General's enforcement of some important federal statute or executive order, DynCorp's position would be, well, that's not removable because the Attorney General was the original plaintiff. And by choosing his state court forum, he chose the forum he litigated there, and therefore the purposes of federal officer removal should be defeated. I've stepped over my time, and I appreciate the Court's indulgence. If there are no further questions, we would ask. First one, obviously, both companies deal with some very important weapons systems issues with the government, the very secret protection of our country's safety, and you both operate in that venue all the time. But it sounds like once the counterclaim was filed, could a state court really resolve the issue of what would be your defense in state court? These things, wouldn't it be necessary for the Army to make that decision about the matching of that? Wouldn't it be required, almost? I don't think it would have been required. I think it certainly might have been wise. But the question at the time that the counterclaim was filed of, you know, was it the type of claim that had to be exhausted through the CDA process? Our reading of the CDA statute at that time and now was, no, it did not have to be. And that's why this case was not removable at that time. It only became removable once there was a pending CDA proceeding, the results of which would be binding on these parties, thereby making it inappropriate and unfit for a court to resolve those same issues at the same time. But you're quite right, Your Honor, that at the end of the day, this is no purely private dispute between two contracting parties. This is a determination that goes to the heart of the Army's execution of the CNTPO program, and it goes to the Army's ultimate judgment about the fitness of these employees to be deployed in a war zone. That is a decision that the Army should make. And that is why Northrop took the steps that it took to ensure that that decisional process would be respected. Thank you so much. Thank you. We will come down to the Greek Council and take a brief recess. This Honorable Court will take a brief recess.
judges: Roger L. Gregory, Robert B. King, Barbara Milano Keenan